**CANAL INDEMNITY COMPANY,**
**Plaintiff,**

**v.**

**LEE'S USED CAR SALES, INC., Latonya Agee and Benny Dyess, d/b/a Dyess Recovery Service, Defendants.**

Civ. A. No. 3:92–cv–408WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 10, 1994.

---

John Stuart Robinson, Jr., Jackson, MS, for plaintiff.

Eugene C. Thach, Jr., Heidelberg, MS, Joseph E. Roberts, Jr., Jackson, MS, Bobby L. Shoemaker, Bay Springs, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is plaintiff's motion for summary judgment under Rule 56,[1] Federal Rules of Civil Procedure. By its motion, Canal Indemnity Company (hereinafter "Canal") contends that it is entitled to declaratory judgment in this suit wherein Canal seeks a holding from this court that Canal has no duty to defend or indemnify any of the defendants herein in a certain state court action, nor any duty to pay any monetary judgments in favor of defendant Latonya Agee in that same state court action. While admitting that it issued a policy of garage liability insurance to defendant Lee's Used Car Sales, Inc., (hereinafter "Lee's"), Canal insists that the policy provides no coverage which would require Canal to defend or to indemnify Lee's, which, along with Benny Dyess, d/b/a Dyess Recovery Service (hereinafter "Dyess"), is being sued by defendant Latonya Agee in a suit for personal injuries in state court. Although defendants oppose Canal's motion, this court agrees with Canal that on the undisputed facts it is entitled to judgment as a matter of law.

Plaintiff Canal Indemnity Company is a Delaware corporation domiciled in South Carolina and licensed to do business in Mississippi. The defendants here are Lee's, a Mississippi corporation; Latonya Agee, a Mississippi citizen; and Benny Dyess, d/b/a Dyess Recovery Service, a Mississippi citizen. This court has jurisdiction over this dispute pursuant to diversity of citizenship, 28 U.S.C. § 1332, since the plaintiff and the defendants are diverse and the controversy here exceeds $50,000.00. Following the directive of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the court applies the substantive law of the State of Mississippi.

### Factual Background

On or about August 31, 1987, Lee's applied to Canal for basic garage liability insurance. After accepting the application, Canal then issued a basic garage liability policy, Policy Number GAR 2870, to Lee's as the named insured. The policy period was for one (1) year from August 31, 1987, through August 31, 1988. This policy was subsequently renewed on a yearly basis and was in effect for the period August 31, 1990, through August 31, 1991. The subject policy contains the following exclusions:

**Exclusions**

This insurance does not apply, under the Garage Liability Coverages:

> (e) **To bodily injury** ... arising out of the ... operation, use, loading or unloading of any
>
> (1) haulaway ... hired by the **named insured** and not being delivered, demonstrated or tested.

A "haulaway" is defined in both the application and the policy as including "automobiles used to tow, pull or transport automobiles, cargo or freight." Upon completing Canal's application for coverage, Lee's had

---

1. Rule 56(a) and (c) of the Federal Rules of Civil Procedure provides:

    (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

    (c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

the option of obtaining haulaway coverage, but specifically rejected it.

The subject policy also contains the following additional exclusion:

### IV. PERSONS INJURED

None of the following is an **insured**:

(ii) Any person or organization other than the **named insured** or its directors, stockholders, partners, members or employees while acting within the scope of their duties as such, with respect to operations performed by independent contractors for the **named insured**.

On or about October 3, 1990, Lee's, located in State Line, Greene County, Mississippi, hired Dyess to repossess a vehicle located in Raleigh, Smith County, Mississippi, owned by Annie Ruth McCullum ("McCullum"). Lee's had a lien on the vehicle. During that repossession, a lawsuit was born.

At the time of the repossession, Latonya Agee, defendant herein, claims that she was a passenger in the McCullum vehicle, parked at the time on McCullum's property in Smith County, Mississippi. Agee alleges that during the October 3, 1990, incident, Dyess hooked a tow truck to the McCullum vehicle and intentionally lifted up the vehicle and then replaced it on the ground in order to get Agee out of the car. Agee alleges that as a result of this incident she suffered bodily injuries entitling her to damages.

In due course, Agee filed a civil lawsuit for personal injuries against Lee's and Dyess. Agee filed her complaint in the Circuit Court of Smith County, Mississippi, as cause number 6,813 and demanded damages in the sum of $450,000.00. She alleges in her lawsuit that Dyess was the agent, servant and employee of Lee's, and that at the time of the incident Dyess was acting in the scope of his employment.

Canal retained counsel to represent Lee's in the Smith County action, but reserved all rights under its policy of insurance to contest whether it had any obligation under the policy to provide a defense for Lee's, and/or pay any judgment in favor of Agee in the above action.

Prior to the October 3, 1990, incident, Lee's knew from past repossession dealings with Dyess that Dyess might use a tow truck in its attempt to repossess McCullum's vehicle. Indeed, Lee's had paid Dyess for past repossessions during which Dyess had used a tow truck. Furthermore, as testified to by Lee's, Lee's planned to pay Dyess for the completed repossession of McCullum's vehicle, whether Dyess did or did not use a tow truck in the effort. No one contends that on October 3, 1990, Dyess operated its tow truck for purposes of any kind of demonstration or test on behalf of Lee's or any other party.

The undisputed facts further show that when Lee's hired Dyess to repossess McCullum's vehicle, Lee's did not exercise any control over the method that Dyess was to employ in attempting to repossess the car. No employee or officer of Lee's ever supervised the repossession of any vehicle by Dyess. In all incidents where Lee's had hired Dyess to repossess a vehicle, including the October 3, 1990, incident, the manner in which the repossession was to be conducted was left entirely to the discretion of Dyess.

Neither did Lee's own, deliver, or in any other way provide the tow truck which was involved in the October 3, 1990, incident to Dyess. Lee's never put any gas in the tow truck nor performed maintenance on it. In addition, with regard to the October 3, 1990, incident, Lee's did not lend any implements, tools, or vehicles to Dyess to be used by Dyess in conjunction with the attempted repossession of McCullum's vehicle.

All repossession jobs were contracted on a per-job basis. Dyess was paid One Hundred Dollars ($100.00) for each vehicle it successfully repossessed. The amount of time which was expended in accomplishing a repossession was irrelevant with regard to the amount of compensation which Lee's would owe Dyess.

Lee's never withheld any money for tax purposes with regard to those amounts of money due Dyess for repossessions. Nor did Lee's maintain any type of insurance on behalf of Dyess.

At the time of the October 3, 1990, incident, Dyess performed repossession services for companies other than Lee's. Dyess was hired on a regular basis by at least two other

parties and worked occasionally for at least five additional parties. ·

Canal contends that the above undisputed facts conjoined with the existence of the haulaway exclusion in the subject policy firmly establish that Canal has no duty to defend or indemnify any of the named defendants in the state court action, nor any duty to pay any judgment entered in favor of Agee. Additionally, says Canal, the independent contractor exclusion in the insurance policy also shields it from any liability here. Canal avers that it has no duty to defend or indemnify Dyess under this policy exclusion because Dyess is not an insured pursuant to the terms of the policy.

### Conclusions of Law

**I. The Haulaway Exclusion/Interpretation Based On The Plain Meaning Thereof.**

■ As stated above, the subject insurance policy contains the following language:

**Exclusions**

This insurance does not apply, under the Garage Liability Coverages:

> (e) **To bodily injury ... arising out of the ... operation, use,** loading or unloading **of any**
>
> (1) **haulaway ... hired by the named insured and not being delivered, demonstrated or tested.**

(emphasis added).

A "haulaway" is defined in the policy (application and declarations) as including "automobiles used to tow, pull or transport automobiles, cargo or freight." There is no contention by any of the parties that the tow truck used by Dyess on October 3, 1990, was anything other than a "haulaway."

It is likewise undisputed that Agee claims that she sustained bodily injuries arising out of the use of a haulaway. And, further, it is uncontested that the named insured, Lee's Used Car Sales, Inc., hired Dyess with full knowledge that it might use a tow truck in its efforts to repossess McCullum's automobile.

To allow defendants under these facts to escape a judgment against them here, this court would have to ignore the plain language of the insurance policy in question. Unless the court discerns an ambiguity in the relevant terms of the insurance contract, the court is required to heed its plain meaning and not strive to accommodate any other suggested construction of its terms. The Mississippi Supreme Court in the case of *Lowery v. Guaranty Bank & Trust Co.,* 592 So.2d 79, 82 (Miss.1991), stated that "where the language of an insurance contract is clear and unambiguous, it is not construed in favor of the insured but is construed as written." *Id.* at 82 (citations omitted).

Then, in the case of *Foreman v. Continental Casualty Co.,* 770 F.2d 487 (5th Cir.1985), the Fifth Circuit had an opportunity in that diversity action to review Mississippi law regarding interpretation of terms contained in contracts of insurance. The Court stated:

> No rule of construction requires or permits the court to make a contract differing from that made by the parties themselves or to enlarge an insurance company's obligations where the provisions of its policy are clear. *Under Mississippi law, "... insurance contracts, like all other contracts, where clear and unambiguous, must be construed exactly as written." To this law we are bound.*

*Id.* at 489 (citations omitted) (emphasis added).

> Lee's simply argues here that:
>
> "for the exclusion to exist, the haulaway must be hired by Lee's and not be delivered, demonstrated or tested. Lee's did not hire a haulaway but rather Dyess. Further, the repossessed vehicle was to be delivered to Lee's."

Lee's Br. in Opp'n to Canal Indemnity Company's Mot. for Summ.J. at 4. Lee's also argues that "Canal was aware that Lee's repossessed vehicles and also was aware that Dyess was used for repossessions." *Id.* at 5.

Lee's arguments collide with the clear thrust of the terms of the policy exclusion. Contrary to Lee's confusing arguments, the terms of the policy exclusion are unambiguous and direct. Canal is entitled to summary judgment on this point. Canal also is entitled to a grant of summary judgment relative to the Independent Contractor Exclusion.

### Independent Contractor Exclusion

As denoted earlier in this opinion, the subject policy includes the following language:

### IV. PERSONS INSURED

None of the following is an **insured**: (ii) Any person or organization other than the **named insured** or its directors, stockholders, partners, members or employees while acting within the scope of their duties as such, with respect to operations performed by independent contractors for the **named insured.**

No one disputes the fact that Lee's did not attempt to exercise control over the manner in which Dyess repossessed cars at the request of Lee's. No one contends that any officer or employee of Lee's ever actually supervised the repossession of any vehicle by Dyess. Lee's merely identified the car or cars which it wished for Dyess to repossess. From that point on, Dyess had the sole discretion as how best to accomplish this objective.

The fact that Lee's failed to establish any time parameters in which a particular repossession was to take place also is not in dispute. In addition, Lee's never withheld any money for tax purposes from Dyess. It did not maintain any type of insurance on behalf of Dyess. It did not provide Dyess the use of a tow truck. It never put gas in Dyess' vehicle, nor did it perform maintenance on it.

All of these factors considered together point unerringly to the conclusion that Dyess was hired as an independent contractor by Lee's and that Dyess was acting in such capacity on October 3, 1990, rather than as an employee for Lee's. Lee's does not dispute this conclusion. In an answer to a request for admission submitted on the point to Lee's by Canal, Lee's responded that Dyess was acting as an independent contractor. However, in her state court complaint, Latonya Agee contends that Dyess is an employee, rather than an independent contractor.

The recent case of *W.J. Runyon & Son, Inc. v. Davis,* 605 So.2d 38 (Miss.1992), is the controlling authority on what guide posts courts should heed in determining whether an entity is to be considered an employee or an independent contractor. The *Runyon* Court provided the following guidance:

At least since 1885, we have in today's context (usually) described our divining rod in terms of right to control. The proverbial independent contractor defense is not available to one who holds the right to control a tortfeasor's injury-causing conduct. (citations omitted).

The right-to-control test is sound in theory and in practice. One who engages the services of another and holds the servant in a legal relationship subject to a right of control has practical power to prevent the servant from committing torts. The rule of *respondeat superior* gives the master incentive to do this. (citation omitted). We have labeled "independent contractors" those we have found not under the master's right of control. Generally, such a person promises a certain output in exchange for the contract price. The master's concern is the finished product alone. Where the master may not supervise the inputs into this performance, he is per force not in a good position to prevent the contractor's torts and should not in justice be held for those torts absent independent negligence. (citations omitted).

*Id.* at 45.

As stated above, Lee's hired Dyess to perform the specific act of repossession of automobiles from customers who were delinquent in making payments. Lee's depended upon the expertise of Dyess in accomplishing the actual task of each repossession and expected Dyess to exercise its own discretion in determining the appropriate manner in which to attempt to repossess each automobile.

In response to Canal's arguments and facts, Lee's simply states that this issue is a factual dispute. Lee's submits only this statement, but no facts to oppose those relied upon by Canal. Lee's, then, has not met its obligation under the strictures imposed by *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The respondent to a summary judgment motion may not rest upon the mere allegations or denials of the movant's pleading, but the

780

respondent's response must set forth specific facts showing that there is a genuine issue for trial. If the respondent to a summary judgment motion does not make such a showing, summary judgment may be appropriate. Fed.R.Civ.P. 56(e). *See also Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under the "control" test set out in *Runyon,* this court finds that Dyess was acting as an independent contractor and not as an employee of Lee's at the time of the October 3, 1990, incident. Thus, pursuant to the terms of the subject insurance policy, the court holds that Dyess is not an insured and thereby is excluded from coverage under the subject policy.

### Conclusion

The court finds that defendants have not submitted any material facts to place in equipoise the applicability of the haulaway exclusion and the independent contractor exclusion in the subject insurance policy. The language contained in the haulaway exclusion is clear and unambiguous. Coverage is not provided for bodily injuries arising out of the use of a tow truck hired by the named insured.

Furthermore, the subject policy contains an independent contractor exclusion. The court finds that Dyess was an independent contractor. As such, Dyess is not an insured, and Canal, therefore, has no duty to defend or indemnify Dyess in the underlying state court action. Under the terms of the subject policy, as well as the law of Mississippi, Canal Indemnity has neither a duty to defend or indemnify any of the named defendants in the underlying state court action, nor to pay any judgment entered in favor of Agee. As a matter of law, the court grants summary judgment to the plaintiff.

**SO ORDERED AND ADJUDGED.**